**A.J.'S WRECKER SERVICE OF DALLAS, INC., Appellant,**

v.

**The Honorable Diana OROZCO, Appellee.**

**No. 05–99–01948–CV.**

Court of Appeals of Texas, Dallas.

March 15, 2001.

Rehearing Overruled April 27, 2001.

---

**13.** The judgment states the opinion is dated February 28, 1994; the record shows the opinion is dated February 26, 1994.

Byron Kevin Henry, McCreary & Association, P.L.L.C., Frisco, James C. Mosser, James C. Mosser Inc., Dallas, for appellant.

Grant Hugh Brenna, Asst. Dist. Atty., Dallas, for appellee.

Before MORRIS, JAMES, and FITZGERALD, JJ.

## OPINION

JAMES, Justice.

A.J.'s Wrecker Service of Dallas, Inc. (A.J.'s) brings this appeal from the denial by the trial court of its petition for writ of mandamus to order the Honorable Diana Orozco (Judge Orozco) to approve A.J.'s appeal bond and forward the record to the county court. A.J.'s brings four points of error contending the trial court abused its discretion by determining: A.J.'s appeal was not perfected; approval of appeal bonds by justices of the peace is discretionary; and the bond requirements imposed by Judge Orozco did not violate the Texas Constitution. A.J.'s also contends the trial court erred by determining Judge Orozco did not abuse her discretion by the requirements she imposed on sureties. For the reasons set forth below, we affirm the judgment of the trial court.

## Background

Felipe Iturbe brought suit against A.J.'s in the Justice of the Peace Court, Precinct 6, Place 1 on March 8, 1999, Judge Orozco presiding. The jury found for Iturbe and judgment was rendered against A.J.'s for $1900 plus court costs. A.J.'s attempted to file an appeal bond the next day. Its bond form contained the signatures of two sureties who shared the same post office box address as A.J.'s and who agreed to be liable for $3862 if a decision was rendered against A.J.'s on appeal. Judge Orozco's clerk refused to accept the appeal bond, apparently because it was not an original copy and failed to contain an oath of surety as required by Judge Orozco. On March 12, 1999, A.J.'s sent the justice court a letter informing the court that an oath of surety is not required by the rules of civil procedure and therefore its appeal bond was sufficient. The justice court responded in a letter dated March 12, 1999 (but not postmarked until March 17, 1999) explaining the requirements needed for sureties, requesting an oath of surety, and giving A.J.'s five days from the date of its letter to correct the defects. A.J.'s did not receive the letter until March 18, 1999. A.J.'s then responded to the justice court by letter dated March 19, 1999. Although A.J.'s did complain that the timing of the letter precluded it from correcting any defects within the time limit imposed,[1] A.J.'s did not attempt to correct the bond, request an extension of time, or call the justice court for clarification of the time limit allowed. Furthermore, A.J.'s informed the court that there were no defects in its bond and requested the court forward the record to the county court.

On April 1, 1999, A.J.'s filed a petition for writ of mandamus claiming Judge Orozco abused her discretion by requiring an oath of surety to perfect an appeal and by not giving A.J.'s sufficient amount of time to correct any defects. On October 8, 1999, the county court found Judge Orozco did not abuse her discretion and denied A.J.'s petition for writ of mandamus. A.J.'s now appeals the county court's order denying its petition.

---

1. Although Judge Orozco's March 12, 1999 letter stated that A.J.'s had five days from the date of the letter to correct the defects in the bond, rule 571 of the rules of civil procedure allows five days from the date of notice.

**48**

## Perfection of Appeal

█ In A.J.'s first point of error, it contends the trial court abused its discretion by determining its appeal from the justice court was not perfected. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). That the trial court decided an issue differently than would this reviewing Court does not necessarily demonstrate an abuse of discretion, nor does a mere error in judgment amount to such an abuse. *Id.*

█ A.J.'s argues that once an appeal bond was filed pursuant to rule of civil procedure 571, A.J.'s appeal was perfected and nothing further was needed to perfect the appeal. However, A.J.'s ignores the plain language of rule 571 which states that the bond itself must be approved by the justice prior to being filed.[2] Rule 571 requires that the bond be filed "with two or more good and sufficient sureties, to be approved by the justice." Clearly this discretionary requirement is necessary for perfection of the appeal.

A.J.'s also contends that even if its bond was insufficient because it failed to contain oaths of sureties, rule 571 allows five days to correct defects. It contends Judge Orozco failed to provide adequate time for it to correct procedural defects. The justice court's letter dated March 12, 1999 was not postmarked until March 17, 1999. The letter stated that A.J.'s had five days from the date of the letter to file oaths of sureties. A.J.'s did not receive the letter until March 18, 1999, one day past the five–day extension to make corrections. However, rule 571 states that a party has five days after *receiving notice* to correct defects. TEX.R.CIV.P. 571 (emphasis added). A.J.'s actually had until March 23, 1999 to correct the defects. A.J.'s did not attempt to correct the defects within five days after receiving notice, nor did it contact the justice court and either ask for an extension of time to comply or request clarification of its due date. Instead, on March 19, 1999, A.J.'s sent the justice court a letter informing the court that there were no defects in its bond, its appeal was perfect-

---

2. Rule of civil procedure 571 states:

The party appealing, his agent or attorney, shall within ten days from the date a judgment or order overruling motion for new trial is signed, *file with the justice a bond, with two or more good and sufficient sureties, to be approved by the justice,* in double the amount of the judgment, payable to the appellee, conditioned that appellant shall prosecute his appeal to effect, and shall pay off and satisfy the *judgment which may be rendered against him* on appeal; or if the appeal is by the plaintiff by reason of judgment denying in whole or in part his claim, he shall file with the justice a bond in the same ten-day period, payable to the appellee, with two or more good and sufficient sureties, to be approved by the justice, *in double the amount of the costs incurred* in the justice court and estimated costs in the county court, less such sums as may have been paid by the plaintiff on the costs, conditioned that he shall prosecute his appeal

to effect and shall pay off and satisfy such costs if judgment for costs be rendered against him on appeal. *When such bond has been filed with the justice, the appeal shall be held to be thereby perfected* and all parties to said suit or to any suit so appealed shall make their appearance at the next term of court to which said case has been appealed. Within five days following the filing of such appeal bond, the party appealing shall give notice as provided in Rule 21a of the filing of such bond to all parties to the suit who have not filed such bond. No judgment shall be taken by default against any party in the court to which the cause has been appealed without first showing that this rule has been complied with. The appeal shall not be dismissed for defects or irregularities in procedure, either of form or substance, without allowing appellant five days after notice within which to correct or amend same.

TEX.R.CIV.P. 571 (emphasis added).

ed, and therefore the justice court should approve the bond and send the case to the county court.

A.J.'s did inform the court that it was impossible to comply with the letter it had received which provided notice of its bond defects; however, it did not ask for an extension or clarification - it instructed the court to approve the bond and forward the case to the county court. Because A.J.'s bond was not approved by the justice court, the trial court did not abuse its discretion by determining the appeal from the justice court was not perfected when A.J.'s attempted to file its bond. Furthermore, A.J.'s was allowed, under rule 571, five days from receiving notice in which to correct defects; it failed to do so, therefore it has waived any complaint on appeal regarding lack of time to correct.

We cannot conclude the county court acted without any guiding principles or rules; we therefore overrule A.J.'s first point of error.

## Discretionary Approval

In A.J.'s second point of error, it contends the trial court abused its discretion by determining that approval of appeal bonds by justices of the peace is discretionary rather than ministerial. A.J.'s contends the subsequent duties of the justice court after A.J.'s proffered its bond were ministerial and therefore mandamus is appropriate.

A writ of mandamus will issue to compel a public official to perform a ministerial act. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex.1991). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Id.* Furthermore, a writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion. However, this rule is not without exception—a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official. *Id.*

A.J.'s argues that once its appeal bond was filed in compliance with rule 571, any further duties of the justice court were clearly ministerial, and therefore mandamus may issue. However, A.J.'s bond was not in compliance with rule 571, and its bond was therefore not "filed." The plain language of rule 571 requires the bond be "approved" by the justice prior to being filed. This is clearly a discretionary act, and A.J.'s bond was not approved by the justice.

A.J.'s attempts to analogize rule 571 to various legislative and court requirements for bonds. For example, A.J.'s claims that rule of civil procedure 749 is very similar to rule 571 and because substantial rather than strict compliance is required with rule 749, the same should be true of compliance with rule 571. However, rule 749 pertains to forcible entry and detainer suits. Furthermore, rule 749 requires "substantial compliance;" rule 571 requires the rule be "complied with." A.J.'s cites to several cases in support of its proposition, none of which are on point nor applicable to our case.[3] Rule 571 clearly provides for ap-

---

3. A.J.'s cites to *Advance Imports, Inc. v. Gibson Prods. Co.*, 533 S.W.2d 168, 170 (Tex.Civ. App.—Dallas 1979, no writ), for the proposition that once an appeal bond is filed the appeal is perfected and the subsequent duties of the justice are ministerial. However, here A.J.'s has not filed a bond because the bond it offered was not approved by the justice.

Likewise, A.J.'s cites to *Hervey v. Forse*, 253 S.W.2d 701, 704 (Tex.Civ.App.—Beaumont 1952, no writ), for the proposition that any challenge to a perfected appeal lies in the appellate court. Again, A.J.'s appeal was not perfected-its appeal bond did not comport with the requirements of the justice court. A.J.'s cites to *Walker v. Blue Garden Water*

proval of the bond by the justice. Therefore, the trial court did not abuse its discretion in finding the approval of an appeal bond pursuant to rule 571 to be discretionary. We overrule A.J.'s second point of error.

### Requirements for Oath of Surety

■ In A.J.'s third point of error, it contends the trial court erred by finding that Judge Orozco did not abuse her discretion by her surety requirements for an appeal bond. The question for this Court is whether the trial court erred in deciding the justice court's decision was not unreasonable or arbitrary. A.J.'s contends Judge's Orozco's surety requirements[4] were an abuse of discretion. A.J.'s argues that rule 571 does not list as requirements those requisites in Judge Orozco's required oath of surety. However, as we have previously stated, rule 571 requires approval of the bond by the justice. The justice should have some impartial method of approving the bond, and Judge Orozco utilized the oath of surety. A.J.'s argues that the requirements imposed by Judge

Orozco were unreasonable; however, the trial court found that Judge Orozco did not abuse her discretion in requiring the oath of surety, and we agree. The justice court needed assurance that the bond could be satisfied. The appeal bond form used by A.J.'s, which it claims is sufficient, did not have any recitation of how the bond could be satisfied. It contained the signatures of two individuals with the same post office box as A.J.'s Wrecker Service, along with their statement that they acknowledge themselves bound as sureties for $3862 in the event that a decision is rendered against A.J.'s on appeal. There was no assurance provided that these individuals could satisfy the bond.

A.J.'s also claims few people possess the resources necessary to qualify as a surety for an appeal bond in Judge Orozco's court. However, for those who cannot afford the appeal bond, rule of civil procedure 572 is available, which provides for an affidavit of inability when the appellant is unable to pay the costs of appeal or provide security for such costs. The trial

---

*Apts.,* 776 S.W.2d 578 (Tex.1989); *Family Inv. Co. v. Paley,* 356 S.W.2d 353, 355 (Tex. Civ.App.—Houston[1st Dist.] 1962, writ dism'd); *Hall v. McKee,* 179 S.W.2d 590, 592 (Tex.Civ.App.—Fort Worth 1944, no writ); and *Commercial Credit Corp. v. Smith,* 143 Tex. 612, 187 S.W.2d 363, 365 (Tex.1945), which are all forcible entry and detainer suits. Forcible entry and detainer suits are based on different rules of civil procedure, namely rules 738–755. A.J.'s cites to *Garcia v. Caremark,* Inc., 921 S.W.2d 417, 420 (Tex.App.—Corpus Christi 1996, no writ) and *Smith v. Valdez,* 737 S.W.2d 141, 142 (Tex.App.—San Antonio 1987, no writ), for the proposition that the supreme court intended to exclude specific requirements for sureties. However, both the *Garcia* and *Smith* opinions refer to appeals from the trial court to the appellate court under former rule of appellate procedure 46(a). For the same proposition A.J.'s also cites to *Reed v. Onion,* 937 S.W.2d 609, 610 (Tex.App.—San Antonio 1996, orig. pro-

ceeding), which concerns an affidavit of inability to pay under rule of civil procedure 572. Sureties are not required under rule 572.

4. Judge Orozco's Oath of Surety required the surety to execute an oath that states the surety is a Texas citizen and a freeholder in the state, presents the surety's net worth over and above debts and liabilities in property subject to execution and sale, and lists the property. The surety must also list his home address, phone number, Texas driver's license number, and social security number. The Oath of Surety states that a surety may be required to provide a personal financial statement. However, Judge Orozco's March 12, 1999 letter explained that the surety's property could be non-homestead real property in Dallas County, attorney's bond, or cash bond. Personal property could also be used if accompanied by a full description of the property along with a serial number and any other identifying features.

court did not err by finding that Judge Orozco did not abuse her discretion by requiring an oath of surety for an appeal bond.

### Violation of Open Court's Provision

 In A.J.'s forth point of error, it contends the trial court abused its discretion by finding that Judge Orozco's bond requirements did not violate the Open Courts provision of the Texas Constitution. A.J.'s failed to set forth this argument in its petition for writ of mandamus; therefore, A.J.'s has failed to preserve this argument for appellate review. *See* TEX. R.APP.P. 33.1.

For the reasons set forth above, we affirm the judgment of the trial court.

