

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00097-CV

_____

IN RE:  WASTE MANAGEMENT OF TEXAS, INC.

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

This five-year-old antitrust action by Josh Bray d/b/a Sanitation Solutions against Waste Management of Texas, Inc., claims antitrust violations[1] by Waste Management in Lamar County and remains in the discovery phase. In late 2009—in response to an order that compelled the production of various internal business records but reserved for a later decision the question of whether the production must include metadata[2]—Waste Management produced responsive records in the format of its choice, Adobe portable document format (PDF). By an explicit exception in the order, the 2009 production excluded the records' metadata. In September 2012, the trial court ordered Waste Management to produce similar information, but this time in its native, electronic format with all metadata.[3] Waste Management's petition for writ of mandamus asks us to direct the trial court to withdraw its order. We refuse, because (1) Waste Management has not shown that the matters to be disclosed include trade secrets, (2) Waste Management has not shown that the order is overbroad, (3) Waste Management has not shown that it has been placed under an undue burden, (4) Waste Management has not preserved its claims regarding transactions occurring after October 31, 2010, and (5) Waste Management has an adequate legal remedy by appeal on its issue regarding allocation of costs.

---

[1]The original lawsuit by Bray filed January 26, 2007, alleges predatory pricing and improper bundling of services.

[2]Metadata is "[i]nformation describing the history, tracking, or management of an electronic file." FED. R. CIV. P. 26(f) (notes of advisory committee to 2006 amendments); see *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 320 n.9 (Tex. 2009) (orig. proceeding).

[3]The material to be produced under this 2012 order amounts to some 25.27 gigabytes of electronically stored information (ESI), including data regarding the product market, the "methodology for Profit & Loss, Cost and Income statements for Defendant," "pricing lists for [Waste Management]'s hauling and landfill contracts/customers," "internal company presentations regarding landfill and hauling," "pricing plans," "company presentations," and "customer pricing."

Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision "so arbitrary and unreasonable it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker*, 827 S.W.2d at 839. "In a mandamus proceeding, we review a trial court's legal conclusions with limited deference because the trial court has 'no discretion in determining what the law is or applying the law to the facts.'" *In re Dillard Dep't Stores*, *Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840); *In re Frank Kent Motor Co.*, 361 S.W.3d 628, 630–31 (Tex. 2012) (orig. proceeding).

To determine whether a party has an adequate remedy by appeal, we apply a balancing test. *See Prudential*, 148 S.W.3d at 136; *see In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding). Under this test, a remedy available on direct appeal is adequate when the detriments of mandamus review outweigh the benefits. *Prudential*, 148 S.W.3d at 136. If the benefits of mandamus review outweigh the detriments, the appellate court must determine whether the remedy by appeal is adequate. *Id.* The Texas Supreme Court reasoned:

> The operative word, "adequate," has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. . . . An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments.

3

*Id.* "Whether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules." *Id.* at 137. Mandamus review should be limited to "exceptional cases" only to prevent impairment of "important substantive and procedural rights." *Id.* at 136; *cf. In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (incidental errors not subject to mandamus review).

Before *Prudential*, the Texas Supreme Court recognized discovery as one of the categories for which mandamus relief was available. *See*, *e.g.*, *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding); *Walker*, 827 S.W.2d at 843; *S. Bag & Burlap Co. v. Boyd*, 38 S.W.2d 565, 570 (Tex. 1931) (adopting commission of appeals opinion). These cases are based on the reasoning that the appellate court would not be able to cure the trial court's discovery error. *Kuntz*, 124 S.W.3d at 181. Although principles announced in *Prudential* generally expand mandamus availability,[4] the Texas Supreme Court has recognized that mandamus review may not be available when the privileged or confidential matter is "so innocuous or incidental that the burden of reviewing an order to produce them outweighs the benefits of such a review." *In re*

---

[4]*See Prudential*, 148 S.W.3d at 137 (mandamus relief "preferable to legislative enlargement of interlocutory appeals" but cautioning against overuse); Richard E. Flint, *The Evolving Standard For Granting Mandamus Relief In The Texas Supreme Court: One More "Mile Marker Down The Road Of No Return,"* 39 St. Mary's L.J. 3 (2007) ("This change has not only muddied the waters concerning when mandamus will lie, but has also expanded the Texas Supreme Court's discretionary jurisdictional supervisory authority. . . ."); Sinead O'Carroll, *Has the Supreme Court of Texas Altered What It Means to Have "No Adequate Remedy by Appeal" and Other Questions Raised by the Court's Recent Opinions: In Re Prudential and In Re AIU*, 17 APP. ADVOC. 11, 14 (Spring 2005) ("In *In re Prudential*, the Court contends that it must make mandamus more available to preserve its own judicial resources . . . ."); *cf. In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) (orig. proceeding) (ordering trial court to grant summary judgment); *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 215 (Tex. 2009) (orig. proceeding) (directing trial court to specify reasons for granting new trial).

*McAllen Med. Ctr.*, *Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (*Walker*'s categorical approach would require review of innocuous complaints).

Frequently, mandamus relief is issued when "the very act of proceeding to trial -- regardless of the outcome -- would defeat the substantive right involved." *Id.* at 468. Because improper disclosure of a trade secret cannot be adequately remedied on appeal, mandamus relief is appropriate. *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 593 (Tex. 2009) (orig. proceeding); *In re Bass*, 113 S.W.3d 735, 745 (Tex. 2003) (orig. proceeding). Thus, if trade secrets have been ordered disclosed, mandamus relief would be available.

*(1)    Waste Management Has Not Shown that the Matters to Be Disclosed Include Trade Secrets*

One principal reason for Waste Management's request for mandamus relief is its claim that the 2012 discovery order requires disclosure of "trade secrets and proprietary, confidential information, to a direct competitor."[5] To make this issue more understandable, we here provide some background.

On March 5, 2009, the trial court[6] signed an order granting Bray's motion to compel and recognizing the parties' agreement "that metadata shall be preserved but need not be produced at this time." To comply with the order and to produce the data in the format of its choice (PDF), Waste Management spent approximately $110,000.00 in reviewing the data for privileged information, converting the electronic records into approximately 70,000 pages of material in

---

[5]The parties agreed to a procedure, discussed below, that would permit Waste Management to designate data "Confidential – Attorney's Eyes Only" and thus prevent Bray from personally reviewing such data.

[6]At the time, the presiding judge was the Honorable Jim Dick Lovett, now deceased.

PDF format,[7] redacting data outside the relevant geographic area[8] of Lamar County,[9] and producing it to Bray's attorneys.

On May 27, 2011, approximately a year and a half after Waste Management produced those items, Bray filed a fourth request for production of documents seeking the electronic discovery in its native format, that is, the same format in which Waste Management maintains the data in the regular course of business. On June 23, 2011, Bray filed a fifth document production request and, later, a second motion to compel. At the resulting hearing, Bray claimed the format of the previously produced electronic discovery did not allow the comprehensive review of that material. Bray additionally requested that metadata be provided. On September 21, 2012, the trial court,[10] granted Bray's motion and ordered electronic production, in their native format and with metadata, of approximately 25.27 gigabytes of data.

Waste Management argues that we have already determined trade secrets to be at issue in an earlier ruling involving these parties. *See In re Waste Mgmt. of Tex.*, *Inc.*, 286 S.W.3d 615, 617 (Tex. App.—Texarkana 2009, orig. proceeding). Waste Management contends that the trial

---

[7]Although Waste Management also produced some spreadsheet computer files in their native format, the bulk of the documents were produced in PDF format.

[8]The relevant geographic market is based on "the area of effective competition" considering the commercial realities of the industry. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961)).

[9]The relevant geographic area was limited to Lamar County. The record is unclear concerning whether this designation was ordered by Judge Lovett or by agreement of the parties. The record contains a transcript of a hearing in which Judge Lovett strongly suggests the relevant geographic area should be Lamar County, but also contains allegations that the relevant geographic area was designated by agreement.

[10]The presiding judge is now the Honorable Eric Clifford.

court abused its discretion because Bray failed to establish the alleged trade secrets are necessary for a fair adjudication.[11]

Bray responds that Waste Management did not file a withholding statement[12] and did not make this objection to the trial court. Bray argues:

> WMTX did not advance this argument in its September 19, 2012[,] Response to Bray's Motion to Compel Production of Electronically Stored Information and for Clarification of Court's March 5, 2009[,] Order and Motion for Protection or at the hearing on this motion on September 21, 2012. Consequently, there is no evidentiary record substantiating WMTX's claim that any information ordered to be produced is indeed a "trade secret." Because WMTX raises this argument for the first time in this original proceeding, and because there is a protective order in effect protecting against the possibility of disclosure to WMTX's competitor, there is no support to WMTX's argument that the Court abused its discretion, and therefore, WMTX's motion should be denied.

Bray argues the trial court's protective order permitting certain information to be designated attorney's eyes only is sufficient to protect any trade secret privilege.

In our earlier mandamus proceeding, we addressed whether Bray could personally review documents designated pursuant to an agreed order "Confidential – Attorney's Eyes Only." We

---

[11]Waste Management argues that *In re Honza*, 242 S.W.3d 578 (Tex. App.—Waco 2008, orig. proceeding), is distinguishable because the case before us does "not involve a dispute over the terms of an agreement that can be resolved by the electronic information and metadata." In *Weekly Homes*, the Texas Supreme Court distinguished *Honza* because (1) the metadata sought had already been shown to exist and had been ordered preserved, (2) there was a direct relationship between the hard drives sought and the claims, and (3) there was extensive testimony about the expert's experience and qualifications. *Weekley Homes*, 295 S.W.3d at 320–21. Both *Honza* and *Weekley Homes* concerned orders to produce computer hard drives for expert examination. As stated by the Texas Supreme Court, "[p]roviding access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged." *Id.* at 317. This case does not involve access to an electronic storage device and, therefore, both *Honza* and *Weekley Homes* are distinguishable from this case.

[12]Waste Management argues it "did include a withholding statement that was labeled 'Withholding Statement,' in its objections to the first three requests for production. While each of these three documents contains a section labeled "WITHHOLDING STATEMENT," the sections state merely that nothing is being withheld, but the right to withhold documents is preserved. We have not been directed to where in the record there is a withholding statement that actually withholds documents. Our own review has discovered no such statement.

7

held, because "both parties seem to have agreed that trade secrets were at issue," Bray had the burden to show the disputed items, including customer lists, were necessary to a fair adjudication of his claims. *Id.* We do not find our prior mandamus ruling determinative here because (1) it concerned a different, albeit related, subject, (2) our prior ruling assumed that Bray conceded the trade secrets status of the records, and (3) the Texas Supreme Court has disagreed that such a procedure affords sufficient protection. A few months after we decided our earlier mandamus proceeding, the Texas Supreme Court issued its opinion in *Union Pacific Railroad. Co.*, which could be interpreted as disapproving of the attorney's-eyes-only procedure. *See In re Union Pac. R.R. Co.*, 294 S.W.3d at 593. Although the trial court had entered an order "restricting those who could view" the trade secrets, the high court concluded, "[T]hat alone does not ensure that an order will not violate the trade secret privilege." *Id.*; *see also In re Energy XXI*, *Gulf Coast*, *Inc.*, No. 01-10-00371-CV, 2010 Tex. App. LEXIS 10117 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, orig. proceeding) (not designated for publication) ("There is no authority that would allow a trial court to order a party to produce privileged documents to the opposing party's attorney, even with the qualification that the documents be produced for 'attorney's eyes only' and subject to the parties' protective order.").

The disapproval expressed in *Union Pacific Railroad Co.*, 294 S.W.3d at 593, is a reflection of the unique characteristics of a trade secret when compared with other intellectual property. While other forms of intellectual property protections (patents, copyrights, and trade dress) protect intellectual property that has become public knowledge, an owner of a trade secret is only protected from wrongful disclosure of the trade secret. *See Wissman v. Boucher*, 240

8

S.W.2d 278, 280–81 (Tex. 1951). The law provides, "[O]ne who either discloses or uses another's trade secret, without a privilege to do so, is liable for such disclosure or use if the disclosure or use constitutes a breach of confidence reposed in the party disclosing or using the trade secret by the owner of the trade secret." *IBP*, *Inc. v. Klumpe*, 101 S.W.3d 461, 472 (Tex. App.—Amarillo 2001, pet. denied) ("To be actionable, the disclosure or use of the trade secret ordinarily must be to the competitive disadvantage of the owner of the trade secret.").

To qualify as a trade secret, the information must be secret and have value to the owner's trade or business. *Wissman*, 240 S.W.2d at 280–81; *Astoria Indus. of Iowa*, *Inc. v. SNF*, *Inc.*, 223 S.W.3d 616, 634 (Tex. App.—Fort Worth 2007, pet. denied); *H. E. Butt Grocery Co. v. Moody's Quality Meats*, 951 S.W.2d 33, 35 (Tex. App.—Corpus Christi 1997, pet. denied); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 cmt. e, cmt. f (1995). A trade secret cannot be a matter of general knowledge in an industry. *Wissman*, 240 S.W.2d at 280; *Global Water Group*, *Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App.—Dallas 2008, pet. denied). Absolute secrecy, though, is not required, the owner must take "reasonable precautions to ensure its secrecy." *Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir. 1994).

To the extent the "Confidential – Attorney's Eyes Only" procedure fails to provide sufficient protection, Waste Management was required to follow the protocol for asserting the trade secret privilege. The Texas Supreme Court has developed the following protocol for asserting the trade secret privilege:

> First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting

9

party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order.

*In re Cont'l Gen. Tire*, 979 S.W.2d 609, 613 (Tex. 1998).

The first step requires Waste Management to establish that the information is a trade secret. *Id.* To determine whether information is a trade secret, we consider the following six-factor test:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Union Pac. R.R. Co*., 294 S.W.3d at 592; *Bass*, 113 S.W.3d at 739 (RESTATEMENT OF TORTS § 757 cmt. b (1939) has been omitted from most recent restatement of torts but incorporated in RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 reporter's note cmt. d (1995)). It was Waste Management's burden to introduce evidence that the discovery order will disclose trade secrets, and Waste Management has failed to introduce any such evidence. Merely claiming trade secrets are at issue is not sufficient. Because the burden does not shift to the requesting party until the opposing party establishes that the disputed discovery contains trade secrets, Bray never had the burden to prove the trade secrets were necessary for fair adjudication. The trial court did not abuse its discretion.[13]

---

[13]Even if there had been some showing of trade secrets, Waste Management has failed to preserve error. To preserve error for appellate review, a party must first present its complaint to the trial court and obtain a ruling. *See* TEX. R. APP. P. 33.1. This requirement applies to mandamus proceedings. *West v. Solito*, 563 S.W.2d 240, 244–45 (Tex. 1978) (orig. proceeding); *In re E. Tex. Med. Ctr. Athens*, 154 S.W.3d 933, 936 (Tex. App.—Tyler 2005, orig. proceeding). Although its objections to Bray's fifth requests for production repeatedly state Waste Management

10

*(2)     Waste Management Has Not Shown that the Order Is Overbroad*

According to Waste Management, the order requires production of data outside the relevant geographic area and is thus an overbroad "fishing expedition."

"An order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy." *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding). An overbroad request is improper regardless of whether it is burdensome. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding). A discovery request is "overbroad" when it encompasses "time periods, products, or activities beyond those at issue in the case" and, therefore, is not "reasonably tailored to include only relevant matters." *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding); *see also Deere & Co.*, 299 S.W.3d at 820; *In re Graco Children's Prods.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding).

Waste Management argues the order is overbroad because it orders production of data concerning areas outside Lamar County. In this case, the relevant geographic area has been defined as Lamar County.[14] Waste Management argued to the trial court that the second motion

does "not waive any of the provisions for protection of confidentiality of trade secrets," Waste Management has not directed us to where they argued to the trial court that trade secrets would be disclosed. As argued by Bray, Waste Management did not advance this issue in their response to the second motion to compel or at the hearing on the motion. Further, Bray affirmatively represented at the hearing that trade secrets were not an issue, and we have not been directed to where in the record Waste Management challenged this statement. At the hearing, Bray's counsel stated, "I would also like to point out that in response to our request for the electronic evidence, no withholding statement was filed. They didn't make any objections [that] there were any privilege documents in that data. So we shouldn't have an issue there."

We believe that Waste Management has failed to preserve error on this issue.

[14]At times, the parties state that the definition was reached by agreement and at other times that the geographic market was defined by Judge Lovett. The record is not clear how the geographic market was defined.

11

to compel will expand the relevant geographic area. Bray denied that it was "changing the relevant geographic market," instead asserting it needed that added data for comparison purposes. We have not been directed to any location in the record where the trial court explicitly expanded the relevant geographic area.

Waste Management assumes that the geographic market determination cannot be reconsidered and that discovery must be limited to that market. We disagree with both assumptions. Any geographic market determination before discovery has been completed is preliminary at best. The composition of the relevant geographic market is often a fact issue for the jury. *See*, *e.g.*, *Gordon v. Lewistown Hosp*., 423 F.3d 184, 212 (3d Cir. 2005) ("The geographic scope of a relevant product market is a question of fact to be determined in the context of each case in acknowledgment of the commercial realities of the industry being considered."); *Seidenstein v. Nat'l Med. Enters.*, *Inc*., 769 F.2d 1100, 1106 (5th Cir. 1985) (Although "usually [a question] of fact for the jury," the relevant market can be determined as a matter of law "in some instances."). As a fact issue, any determination before discovery is inherently preliminary. Even if the relevant geographic market is Lamar County, information concerning activities outside the county can still be reasonably calculated to result in relevant evidence. While it might be easier for Bray to review the data limited to just Lamar County, the trial court did not clearly abuse its discretion by granting Bray's request for the 25.27 gigabytes of data identified by Waste Management as potentially relevant.

Waste Management claims Bray's request, similar to the discovery at issue in *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989) (orig. proceeding), allows Bray "to generally peruse

all evidence" Waste Management has. Bray's requests, though, are much more specific than in

*Loftin*. In *Loftin*, the request was for "all evidence that supports Lumbermens' allegations." *Id.*

By contrast, Bray's requests in his third request for production were as follows:

> 1. Detailed documentary support (to include each customer's name and annual revenue) for the revenue base used to calculate and remit Annual Road Use Tax payment to City of Paris, Texas; January 1, 2004 - present.
>
> 2. Complete Set of contracts and correspondence files for your 50 largest customers in Lamar County, Texas; January 1, 2004 - present
>
> 3. All landfill Daily Activity Reports/Tickets and/or like documents for the past 24 months from your landfill in Lamar County, Texas which would identify customer name; weight of load; price charged (per yard/ton or total charge).
>
> 4. Complete set of Monthly Financial Statements (Income Statement, Balance Sheet, and Statement of Cash Flow) for the Waste Management District that includes Paris, Texas; January 1, 2004 - present.
>
> 5. Schedule of Fixed Assets in Lamar County, Texas (Ad Valorem tax assessment); January 1, 2004 to present.

The 25.27 gigabytes of data are the electronic files that Waste Management designated as

"potentially relevant" to these requests and to similar requests made in Bray's other requests for

production. The requests are not for "all evidence" as in *Loftin*.

Additionally, Waste Management cites *Texaco*, *Inc. v. Sanderson*, 898 S.W.2d 813, 815

(Tex. 1995) (orig. proceeding); *In re American Optical Corp.*, 988 S.W.2d 711 (Tex. 1998) (orig.

proceeding); and *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding), for its

claim that Bray's requests amount to a fishing expedition. In *Sanderson*, the request for "all

documents authored by Sexton on the subject of safety, without limitation as to time, place or

subject matter, is overbroad." *Sanderson*, 898 S.W.2d at 815. In *American Optical Corp.*, the

requests "were not tied to particular products which plaintiffs allegedly used or to the time periods of such use." *Am. Optical Corp.*, 988 S.W.2d at 712. The request in *CSX Corp.* was for safety information "for twenty-five years beyond the applicable time period." *CSX* Corp., 124 S.W.3d at 153. Bray's requests are limited to a specific time period, place, and subject matter.

The general rule is that a party may obtain discovery regarding any matter that is not privileged, is relevant, and is reasonably calculated to lead to the discovery of admissible evidence. *See Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 127 (Tex. 1995) (orig. proceeding); *see also* TEX. R. CIV. P. 192.3(a). Because reasonable people can disagree concerning whether information related to counties adjacent to Lamar County is reasonably calculated to result in admissible evidence, we are unwilling to find a clear abuse of discretion.

Waste Management's remaining overbreadth complaints merely challenge the amount of discovery being ordered. "[T]he sheer volume of a discovery request does not in itself render the request irrelevant or overbroad as a matter of law." *In re Am. Home Assur. Co*., 88 S.W.3d 370, 374 (Tex. App.—Texarkana 2002, orig. proceeding). Although a large amount of electronic discovery has been ordered, that fact does not, by itself, amount to an overly broad discovery order. We overrule Waste Management's overbreadth complaints.

*(3)      Waste Management Has Not Shown that It Has Been Placed Under an Undue Burden*

The current discovery order places on it an undue burden, Waste Management argues, on numerous bases: (a) that the order is a "do over" that requires Waste Management to review and redact the data a second time, (b) that it requires the production of metadata after metadata was relinquished earlier, (c) that it insufficiently specifies the form in which the data is to be

14

produced, (d) that production in native format makes redaction impossible, and (e) that producing metadata in native format is more costly. We disagree.

*Relinquishment of Metadata?*

According to Waste Management, Bray denied any request for metadata in 2009 and is not entitled to change his mind after production has occurred.

At a 2008 hearing on Bray's motion to compel compliance with his third request for production, the following colloquy occurred:

> MR. ROBISON: I think they do want e-mails, they do want electronic communication, correspondence. So I know you were hoping there wouldn't be an e-mail or electronic communication discovery production. But I think both sides are going to have to search e-mail-files, word documents, excel spreadsheets.
>
> THE COURT: Does that include metadata?
>
> MR. ROBISON: We didn't talk about that.
>
> MRS. MUELKER: That's a good question. Does it?
>
> MR. SOURDS: I don't want to -- I would say, no. I don't know if you -- I mean, that is a whole big genre. If you're going to go after "the metadata --
>
> THE COURT: Well, let me put it this way, if anything appears in the record to be suspicious --
>
> MR. SOURDS: There you go.
>
> THE COURT: -- we can try, somehow, then come back to metadata on those documents. All right. So y'all have a lot to do.

The 2009 order provided that "the parties agreed that metadata shall be preserved but need not be produced at this time."

15

That conversation and the order do not deny any desire for metadata; rather, the decision is merely postponed. A party's nonproduction is not justified merely because a request is burdensome; "it is only undue burden that warrants nonproduction." *In re Energas Co.*, 63 S.W.3d 50, 55 (Tex. App.—Amarillo 2001, orig. proceeding); *see Alford Chevrolet-Geo*, 997 S.W.2d at 181 (requiring demonstration of undue burden or harassment). The trial court's decision to postpone any decision concerning metadata does not, by itself, create an undue burden.

*Vague Form?*

Waste Management contends, because Bray failed to specify a form for the electronic discovery as required by the discovery rules, the production in PDF format was reasonable and any "do-over" is an undue burden. *See* TEX. R. CIV. P. 196.4.

We do not think Bray failed to specify a form for electronic discovery. Rule 196.4 provides that the request "specify the form in which the requesting party wants [the discovery] produced." TEX. R. CIV. P. 196.4. Bray made three requests for electronic discovery before Waste Management produced the documents. Although the second request did not contain any definitions or instructions concerning electronic discovery,[15] the first and third requests contained the following instruction: "Any and all data or information which is in electronic or magnetic form should be produced in a reasonable manner." Although this specification was not

---

[15]It is uncontested the second request did not request electronic discovery.

as detailed as Bray's later requests,[16] Bray did specify the form of electronic discovery as "reasonable manner."

The Texas Supreme Court has instructed that the Texas Rules governing electronic discovery are sufficiently similar to the Federal Rules for Texas courts to "look to the federal rules for guidance." *Weekley Homes*, 295 S.W.3d at 317. Although the Texas Rules of Civil Procedure do not contain a default form, the default form under the Federal Rules of Civil Procedure is "a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms." FED. R. CIV. P. 34(b). We conclude Bray's original instruction that the electronic discovery must be produced in a "reasonable manner" is the functional equivalent of the Federal "reasonably useable form or forms."

Waste Management cites *Weekley Homes* for the proposition that requests for production of electronic records must be "clearly understood" so that disputes can be avoided. *See Weekley Homes*, 295 S.W.3d at 314. The Texas Supreme Court, though, was not referring to specificity concerning the file format, but was referring to the subject matter being requested, "deleted emails." *Id*. We do not read *Weekley Homes* as requiring the rigid specificity claimed by Waste

---

[16]Bray's fourth request contained the following more detailed definition:

> As used herein, the term "electronically stored information" or "ESI" refers to any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained – translated, if necessary, by the respondent into reasonably usable form. ESI is to be produced in its native format, original file or current file format inclusive of all metadata. ESI must be provided on a load file compatible with Concordance software. An ESI file must be in the same format as "maintained in the regular course of business in electronic form." Production of redacted and/or modified files will not be considered sufficient compliance with this request and will not satisfy production obligations.

Management.  Waste Management appears to be under the impression that the requesting party must specify the exact computer file format.  We do not believe such minute specificity is required.

A request for reasonably useable or a reasonable manner is sufficient.  It provides some flexibility to the producing party.  For example, a request for .docx file format used by Microsoft Word 2010 might require some producing parties to purchase the specific software requested and expend resources converting files to the requested format.  On the other hand, if the request was simply for a "reasonably useable" electronic discovery, the producing party could produce files in Word Perfect X4 format instead.  Communication between the parties is essential,[17] and, if a party feels a request is too ambiguous, that party should contact the opposing side.  A small amount of ambiguity, though, does not give the producing party *carte blanche* to do whatever it wants.  Although some communications do appear in the record, we have not been directed to any communication in which Bray agreed PDF files would suffice.[18]  We conclude Bray's request that the form be a "reasonable manner" is sufficiently specific.

Conclusory allegations of undue burden are insufficient; a party resisting discovery must produce some evidence supporting its claim of undue burden.  *Alford Chevrolet-Geo*, 997

---

[17]*See Weekley Homes*, 295 S.W.3d at 314 & n.6 (noting benefits of early communication).

[18]Waste Management claims the delay in objecting implies consent to receipt of electronic discovery in PDF format. *See Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 426 (D. N.J. 2009) (failure to object within reasonable period of time waived any right to metadata).  Although the delay is troubling, we have not been persuaded the delay establishes waiver as a matter of law.  First, Bray clearly objected to the PDF format in his fourth request for production—the first request after receiving the electronic discovery.  Second, given the length of time over which the electronic discovery trickled in (several months after years of requests) and given the sheer volume of electronic discovery, the trial court had discretion to determine Bray did not consent to the PDF format by failing to object immediately.

S.W.2d at 181; *Energas Co.*, 63 S.W.3d at 55. The only evidence we have been directed to establishes an estimated cost of $5,500.00.[19] While Waste Management complains about the massive costs it has already incurred, it has failed to show that the order being challenged, which is estimated to result in $5,500.00 in added expense, is unduly burdensome.

Waste Management claims it will have to review and redact the documents a second time. As argued by Bray, there is no evidence to support this allegation. Although Waste Management cites estimates for the cost of a document review conducted in 2009,[20] we have not been directed to any evidence and our own review has not discovered any evidence that this process will need to be repeated. While Waste Management spent $110,000.00 on the first batch of electronic discovery, the relevant question in this mandamus is the cost of the ordered production, not the amount of money previously spent. Our inquiry focuses on the costs being ordered by the trial court's current order—$5,500.00. We fail to see how, given the extensive litigation at issue, the trial court's order poses an undue burden.

Waste Management argues production in native format renders it impossible to redact the electronic discovery to protect trade secrets or other privileged information. As noted above, Waste Management abandoned all of its unspecified privilege claims except trade secrets. Also, Waste Management has failed to provide any evidence supporting its allegations that trade

---

[19]Luis Parra, vice president of the company which Waste Management contracted with to convert the electronic discovery to PDF files, states in his affidavit that production of the 25.27 gigabytes of electronic discovery in its native form will cost $5,500.00.

[20]Waste Management extensively quotes from an affidavit by Craig Zieminski, one of Waste Management's attorneys, in its petition, and its reply argues that 3,807 hours will be expended. Zieminski's affidavit was signed July 15, 2009, and a supplemental affidavit was signed by him August 31, 2009. Both affidavits concern the estimated costs of the discovery which has already been conducted. Apparently the estimates were grossly overstated, the record establishes that only 299 hours were spent reviewing the documents.

secrets will be disclosed. We fail to see how an inability to redact can be relevant when there is no evidence presented supporting any right to redact.

Further, a discovery request will not result in an undue burden when the burden of responding to it is the result of the responding party's own "conscious, discretionary decisions." *ISK Biotech Corp. v. Lindsay*, 933 S.W.2d 565, 569 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding); *see In re Whiteley*, 79 S.W.3d 729, 734–35 (Tex. App.—Corpus Christi 2002, orig. proceeding). Waste Management argues the order renders the prior discovery, costing $110,000.00, "ultimately meaningless." The law is not clear concerning whether a form which removes metadata is a "reasonably useable form," particularly when a party is on notice that metadata may be needed. Despite the uncertainty in the law and with notice that metadata might be requested in the future,[21] Waste Management made the conscious decision to remove metadata and produce the data in PDF form. It is not our role to rescue Waste Management from potentially costly discretionary decisions.

Finally, Waste Management claims that the trial court abused its discretion by refusing to let Waste Management produce the metadata in PDF form instead of producing the files in native format. Waste Management claims the trial court erred in failing to weigh the costs and benefits of this alternative. Although Waste Management claims this procedure would be "much less costly," its claim is not supported by the evidence. Parra estimates the cost of supplementing the PDF electronic discovery with metadata in PDF form at $2,500.00. Thus, the difference between

---

[21]The trial court's 2008 order placed Waste Management on notice that the decision concerning metadata was being postponed for a later determination.

the cost of producing metadata in PDF form and the trial court's order is $3,000.00. We do not find this difference sufficient to constitute an abuse of discretion.

There is federal authority that removal of metadata can render documents not "reasonably useable":

> The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.

FED. R. CIV. P. 34 (notes of advisory committee to 2006 amendments); *see*, *e.g.*, *In re Payment Card Interchange Fee*, No. MD 05-1720, 2007 U.S. Dist. LEXIS 2650, at \*\*14–18 (E.D.N.Y. Jan. 12, 2007) (documents stripped of metadata do not comply with Rule 34(b) of the Federal Rules of Civil Procedure); *cf. Aguilar v. Immigration & Customs Enforcement Div.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) (citing advisory committee's notes); *Dahl v. Bain Capital Partners, LLC*, 655 F.Supp.2d 146, 150 (D. Mass. 2009) (spreadsheets must be produced in native format to be reasonably usable).

Despite Waste Management's unsupported allegations to the contrary, the record provided to us in this case establishes an estimated cost of $5,500.00 to comply with the trial court's order. Waste Management has failed to show the trial court's order is unduly burdensome.

21

*(4) Waste Management Has Not Preserved Its Claims Regarding Transactions Occurring After October 31, 2010*

According to Waste Management, the trial court abused its discretion because the order contradicts an agreed scheduling order entered ten weeks before. The agreed scheduling order requires Waste Management to provide data for a time period of only September 1, 2005, through October 31, 2010. The trial court order compelling discovery requires Waste Management to provide data through the "present." The parties agreed to an end date of October 31, 2010, because Bray opened a competing landfill on that date.

While Waste Management's argument resonates with us, we cannot grant relief on this issue. Waste Management failed to raise this argument and has not directed us to where this argument was presented to the trial court. This issue has not been preserved for review. *See* TEX. R. APP. P. 33.1; *E. Tex. Med. Ctr. Athens*, 154 S.W.3d at 936. Mandamus relief is not available until the trial court is afforded the opportunity to correct the alleged mistake or error.

*(5) Waste Management Has an Adequate Legal Remedy by Appeal on Its Issue Regarding Allocation of Costs*

Waste Management's sole remaining argument is that Bray should be responsible for the costs because a "do-over" is an "extraordinary step." Rule 196.4 provides:

> The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot - through reasonable efforts - retrieve the data or information requested or produce it in the form requested, the responding party must state an objection complying with these rules. If the court orders the responding party to comply with the request, the court must also order that the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information.

22

TEX. R. CIV. P. 196.4.  Additionally, Waste Management cites two cases discussing cost shifting under the Federal Rules of Civil Procedure.  *See Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003); *Surplus Source Grp.*, *LLC v. Mid Am. Engine*, *Inc.*, No. 4:08-cv-049, 2009 U.S. Dist. LEXIS 29260 (E.D. Tex. Apr. 7, 2009) (not designated for publication).  It is not necessary for us to determine if a "do-over" is an "extraordinary step."

Even if Bray should bear the costs, Waste Management has an adequate remedy by appeal.  To put it bluntly, this dispute merely concerns a *de minimus* amount of money given the scale of this litigation.  Parra states in his affidavit that production of the 25.27 gigabytes of electronic discovery in its native form will cost $5,500.00.

Mandamus relief is available only when the benefits of mandamus review outweigh the detriments.  *Prudential Ins. Co.*, 148 S.W.3d at 136.  Waste Management knew that metadata was to be preserved and that it may be ordered to be produced in the future.  The difference between the cost of producing metadata in PDF form and the trial court's order is $3,000.00.  Given the scale of this case, the difference of $3,000.00 is insignificant and fails to justify the extraordinary remedy of mandamus relief.  This issue presents the circumstance predicted by the Texas Supreme Court in *McAllen Medical Center*, *Inc.*, 275 S.W.3d at 469.  The complained of error is "so innocuous or incidental that the burden of reviewing an order to produce them outweighs the benefits of such a review."  *Id.*  If the trial court erred by ordering Waste Management to pay $3,000.00 worth of discovery costs because it was a "redo" and therefore "extraordinary," Waste Management can seek to recover these costs on appeal.  Because any error can be fully remedied on appeal, mandamus review is not available.

23

Waste Management has not shown it is entitled to mandamus relief. For the reasons stated, relief is denied.

We hereby lift the stay granted at Waste Management's request. Waste Management has requested that we restart the time period granted by the trial court for compliance. Bray argues, in light of the age of this case and the August trial setting, that we should decline to grant such an extension. Our decision on this question will make a difference of thirty-one business days in the deadline for compliance, a period we believe is not significant considering the posture of this case. The trial court granted "60 business days" for compliance with its order. We hereby restart that sixty-day period as of the date of this opinion. Therefore, compliance with the trial court's order should occur within sixty business days from the date of this opinion, subject to any further adjustment the trial court might make to that schedule.

Josh R. Morriss, III
Chief Justice

Date Submitted:      January 17, 2013
Date Decided:      January 18, 2013