Kirk DAHL, et al., Individually and on Behalf of All Others Similarly Situated, Plaintiffs

v.

BAIN CAPITAL PARTNERS, LLC, et al., Defendants.

Civil Action No. 07–12388–EFH.

United States District Court, D. Massachusetts.

June 22, 2009.

Arthur L. Shingler, III, Hal Cunningham, Christopher M. Burke, Kristen M. Anderson, Mary K. Blasy, Scott & Scott LLP, Brian J. Robbins, Robbins Umeda & Fink LLP, Phong L. Tran, David W. Mitchell, Elisabeth A. Bowman, Susan G. Taylor, Samantha A. Smith, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA, Charles N. Nauen, Karen H. Riebel, Richard A. Lockridge, W. Joseph Bruckner, Lockridge Grindal Nauen P.L.L.P., Damien Riehl, Robins, Kaplan, Miller & Ciresi L.L.P., K. Craig Wildfang, Stacey Slaughter, Thomas B. Hatch, Robins, Kaplan, Miller & Ciresi LLP, Minneapolis, MN, Lisa A. Furnald, Robins, Kaplan, Miller & Ciresi L.L.P., Boston, MA, David R. Scott, Scott & Scott LLP, Colchester, CT, George C. Aguilar, Providence, RI, J. Gerard Stranch, IV, Michael Gilman Stewart, Branstetter, Stranch & Jennings, PLLC, Nashville, TN, Jack Landskroner, Paul Grieco, Landskroner Grieco Madden, Ltd., Cleveland, OH, Jayne A. Goldstein, Shepherd, Finkelman, Miller & Shah, LLP, Weston, FL, Mark Reinhardt, Roberta A. Yard, Reinhardt Wendorf & Blanchfield, St. Paul, MN, Tyler W. Hudson, Wagstaff & Cartmell LLP, Kansas City, MO, Walter W. Noss, Scott & Scott LLP, Cleveland Heights, OH, for Plaintiffs.

Craig S. Primis, Michael F. Williams, Thomas D. Yannucci, Kirkland & Ellis LLP, Hillary C. Mintz, Simpson Thacher & Bartlett LLP, James C. Egan, Jr., Jeffrey L. White, Katherine A. Ambrogi, Steven A. Newborn, Carrie M. Anderson, Weil Gotshal & Manges, R. Hewitt Pate, Ryan Shores, Wesley R. Powell, Hunton & Williams LLP, Franklin R. Liss, John A. Freedman, Sarah A. Friedman, William J. Baer, Arnold & Porter LLP, Bernard A. Nigro, Jr., Willkie Farr & Gallagher LLP, Marcellus Williamson, William Sherman, Latham & Watkins LLP, Ian Simmons, Richard Parker, O'Melveny & Myers LLP, Washington, DC, James H. Mutchnik, Kirkland & Ellis LLP, Dane A. Drobny, Michael P. Mayer, Winston and Strawn LLP, Chicago, IL, John D. Hanify, Michael Thomas Marcucci, Hanify & King, P.C., Kevin M. McGinty, Meredith M. Leary, Steven J. Torres, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, John D. Donovan, Jr., Ropes & Gray LLP, James R. Carroll, Kurt W. Hemr, Skadden, Arps, Slate, Meagher & Flom, Ian D. Roffman, Jonathan L. Kotlier, Nutter, McClennen & Fish, LLP, Thomas C. Frongillo, Weil, Gotshal & Manges LLP, Courtney Amber Clark, James W. Matthews, Robert J. Muldoon, Jr., Sherin and Lodgen LLP, James C. Burling, Wyley S. Proctor, Wilmer Hale LLP, Boston, MA, Kevin J. Arquit, Peter C. Thomas, Rey-

nelle Brown Staley, Joseph F. Tringali, Paul C. Gluckow, Ryan A. Kane, Simpson, Thacher & Bartlett LLP, Austin F. McCullough, Gandolfo V. Diblasi, Julia M. Guaragna, Stephanie G. Wheeler, Sullivan & Cromwell LLP, Daniel M. Segal, Jerome S. Fortinsky, Kenneth M. Kramer, Wayne Dale Collins, Shearman & Sterling LLP, Douglas H. Flaum, Michael B. deLeeuw, Peter S. Guryan, Fried, Frank, Harris, Shriver & Jacobson LLP, Arun S. Subramanian, Susman Godfrey L.L.P., Barbara H. Wootton, Arnold & Porter LLP, Alan J. Weinschel, Claire L.M. Webb, Eric S. Hochstadt, Fiona Schaeffer, Helene D. Jaffe, Weil Gotshal & Manges LLP, Raymond M. Sarola, Roger Netzer, William H. Rooney, Willkie Farr & Gallagher LLP, Kenneth Conboy, Latham & Watkins, Abby F. Rudzin, Jonathan Rosenberg, O'Melveny & Myers, LLP, New York, NY, Erica W. Harris, Mary Kathryn Sammons, H. Lee Godfrey, Harry P. Susman, Susman Godfrey L.L.P., Houston, TX, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The court grants in part and denies in part Plaintiffs' Motion for Entry of Order Governing Discovery Format (Docket No. 217).

*Introduction*

This motion centers on electronic discovery. The proper handling of electronic discovery is a new and developing area of law practice. The Federal Rules first addressed electronic discovery in 2006 and the Local Rules of this court have yet to provide any guidance on electronic discovery. Therefore, the court appreciates that it treads in what still are largely unknown waters.

The court made clear in its December 15, 2008 decision on this matter that it is determined to have discovery proceed in an organized and managed fashion. Recent Supreme Court jurisprudence on discovery influenced the court's decision. The Supreme Court expressed frustration with trial courts' supervision of discovery in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and the Supreme Court echoed this frustration more recently in *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, —— (2009).

The court's analysis follows and is organized by each issue: (1) payment of discovery; (2) metadata; (3) excel spreadsheets; and (4) privilege logs. As in previous rulings, the court refers to the plaintiffs as the "Shareholders" and the defendants as the "PE Firms."

*Decision*

■ The court first considers the dispute over shifting discovery costs. The court rules that the PE Firms are to pay their own costs in producing the PE Firms' electronic documents to the Shareholders. For all discovery, including electronic discovery, the presumption is that parties must satisfy their own costs in replying to discovery requests. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 283 (S.D.N.Y.2003) (electronic discovery). Courts will rarely shift costs to the requesting party and this is not one of those exceptional circumstances. According to Rule 26, the primary federal rule on discovery, electronic discovery costs can be shifted if the responding party identifies the source of the requested documents as not reasonably accessible because of an undue burden or cost on the responding party. Fed.R.Civ.P. 26(b)(2)(B).

■ These conditions are not met here. First, the PE Firms neglect to identify which documents are inaccessible or the nature of that inaccessibility. Second, the PE Firms do not explain how they will sustain an undue burden or cost in producing documents. In short, the PE Firms fail to provide any grounds for shifting costs, which they must provide to overcome the presumption that they bear the costs in producing their electronic documents.

■ At the same time, the court rules that the PE Firms do not have to pay to change the format of their responsive documents. If the Shareholders want the format of the documents to be changed, they must pay for this modification. Quite logically, Rule 34, which focuses on electronic document production, requires that just as parties must satisfy their costs of producing documents, they need only produce documents "as they are kept in the usual course of business." Fed. R.Civ.P. 34(b)(2)(E)(i). Therefore, the PE Firms do not have to alter the format of documents, they need only produce documents as they ordinarily maintain them. The Shareholders, and not the PE Firms, have to pay: (1) for scanning and optical character recognition ("OCR") for paper documents; and (2) for OCR for those electronic documents without text search capabilities.

Moreover, while Rule 34 does suggest that a responding party should translate electronically stored information, "if necessary," to make that information "reasonably usable," the Shareholders make no showing that such translation by the PE Firms is necessary to make the documents reasonably usable. *See* Fed.R.Civ.P. 34(a)(1)(A). If in fact documents to be produced by the PE Firms are not reasonably usable as kept in the usual course of business, the PE Firms should translate

these documents into a usable form before producing them to the Shareholders.

■■ Also, if the PE Firms change the format of any documents for their own use in this litigation, they should offer the Shareholders access to these altered documents. The Shareholders would need only pay to put the converted documents on DVDs, a cost they state in their memorandum they are willing to carry. The parties should cooperate as much as possible in exchanging information, for this collaboration helps to fulfill the overall goal of discovery: to focus on matters reasonably calculated to produce evidence admissible at trial. *Oppenheimer*, 437 U.S. at 351–52, 98 S.Ct. 2380.

The court's concern over the goal of discovery is also relevant to the parties' dispute over metadata. Here, too, the court believes the parties must be concerned with uncovering admissible evidence. The Shareholders seek all of the metadata associated with emails and word documents produced by the PE Firms. The PE Firms refuse to produce all metadata and instead offer to provide 12 fields of metadata. The court rules in favor of the PE Firms for two reasons. First, case law shows wariness about metadata's value in litigation. Many courts have expressed reservations about the utility of metadata, explaining that it does not lead to admissible evidence and that it can waste parties' time and money. *Wyeth v. Impax Lab., Inc.*, 248 F.R.D. 169, 171 (D.Del.2006); *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 651 (D.Kan.2005). Second, Rule 34 militates against the broad, open disclosure of metadata that the Shareholders seek. The Rule 34 Advisory Committee Notes to the 2006 Amendment express concern that producing diverse types of electronically stored information in the same format would be costly, burdensome, and ultimately fruitless. Fed.R.Civ.P. 34

advisory committee's notes. Instead, the notes explain that requests should be tailored to each type of program, so only necessary data is produced.

 The court applies this principle to the metadata requests here. Rather than a sweeping request for metadata, the Shareholders should tailor their requests to specific word documents, specific emails or specific sets of email, an arrangement that, according to their memorandum, suits the PE Firms. This more focused approach will, the court hopes, reduce the parties' costs and work. Furthermore, it reflects the general uneasiness that courts hold over metadata's contribution in assuring prudent and efficient litigation.

The court next discusses the dispute over producing excel spreadsheets in their native format. The court rules that spreadsheets are to be produced in their native format. Again, Rule 34 requires that documents be produced as they are kept in the usual course of business. Fed. R.Civ.P. 34(b)(2)(E)(i). In the usual course of business, the PE Firms maintain spreadsheets in their native format. Native format means that the spreadsheets have certain search capabilities and attributes, such as formulae. Therefore, Rule 34 requires that the PE Firms produce the spreadsheets in native format, keeping these attributes and search capabilities intact. Furthermore, that the majority of the PE Firms agree to produce the spreadsheets in their native format, and only two refuse to do so, demonstrates the reasonableness of this discovery request. The court orders all of the PE Firms to produce their excel spreadsheets in native format.[1]

Finally, the court rules that the PE Firms must provide privilege logs in native format. Although the Shareholders claim that the PE Firms refuse to produce privilege logs in native format, the PE Firms state in their opposition memorandum that, except for one PE Firm, the parties resolved this dispute. The court orders this one PE Firm to join the other PE Firms and provide privilege logs in their native format to the Shareholders.

Plaintiffs' Motion for Entry of Order Governing Discovery Format (Docket No. 217) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

---

1. The court notes that it holds different views of spreadsheet native format versus metadata because of the different functions of native format and metadata. Maintaining spreadsheets in their native format is necessary to assure the integral elements of a spreadsheet remain undisturbed. In contrast, the court is not convinced that metadata is an integral element of a given email or word document.