STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

17-755


THE STATE OF LOUISIANA AND
THE VERMILION PARISH SCHOOL BOARD

VERSUS

LOUISIANA LAND & EXPLORATION COMPANY, ET AL.


**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82162
HONORABLE JEROME M. WINSBERG, PRESIDING AD HOC

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.


WRIT DENIED.

**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Todd J. Wimberley**
**Ross J. Donnes**
**D. Adele Owen**
**Leah C. Poole**
**Caroline H. Martin**
**Christopher D. Martin**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
>       **State of Louisiana**
>       **Vermilion Parish School Board**

**Jerold Edward Knoll**
**The Knoll Law Firm, L.L.C.**
**233 South Main St.**
**Marksville, LA 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
>       **State of Louisiana**
>       **Vermilion Parish School Board**

**Grady J. Abraham**
**Attorney at Law**
**5040 Ambassador Caffery Parkway, Suite 200**
**Lafayette, LA 70502**
**(337) 234-4523**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
>       **State of Louisiana**
>       **Vermilion Parish School Board**

**Calvin E. Woodruff, Jr.**
**Attorney at Law**
**220 South Jefferson Street**
**Abbeville, LA 70511**
**(337) 898-5777**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
>       **State of Louisiana**
>       **Vermilion Parish School Board**

**Michael R. Phillips**
**Claire E. Juneau**
**Jeffrey J. Gelpi**
**Kean Miller LLP**
**909 Poydras Street, Suite 3600**
**New Orleans, LA 70112**
**(504) 585-3050**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Union Oil Company of California**

**L. Victor Gregoire**
**Alan J. Berteau**
**Kean Miller LLP**
**400 Convention Street, Suite 700**
**Baton Rouge, LA 70802**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Union Oil Company of California**

**Robert E. Meadows**
**Carol M. Wood**
**Andrew M. Stakelum**
**King & Spaulding LLP**
**1100 Louisiana, Suite 4000**
**Houston, TX 77002**
**(713) 751-3200**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Union Oil Company of California**

**GREMILLION, Judge.**

The defendant-applicant, Union Oil Company of California (UNOCAL), seeks supervisory writs from the trial court's judgment denying its motion to compel discovery. For the following reasons, we deny the writ and affirm the trial court's ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves an oilfield contamination lawsuit that is governed by 2006 La. Acts No. 312, which enacted La.R.S. 30:29. The plaintiffs, the State of Louisiana (State) and the Vermilion Parish School Board (VPSB), filed suit against UNOCAL and other defendants, alleging that property owned by the State and managed by VPSB was damaged as a result of fifty-five years of oil and gas exploration activities. The plaintiffs' private law claims were tried by a jury in April and May 2015. The jury found UNOCAL liable for environmental damage but found no liability on the part of the other defendants.

In accordance with the provisions of Act 312, in August 2015, the trial court signed an order referring the case to the Louisiana Department of Natural Resources, Office of Conservation (LDNR) to develop a feasible plan for the remediation of the environmental damage on the plaintiffs' property. After conducting a two-week hearing, the LDNR issued a feasible remediation plan, which was subsequently adopted by the trial court. The judgment adopting the LDNR's plan is currently the subject of an appeal lodged with this court on September 13, 2017, docket number 17-830.

After the judgment was rendered regarding the remediation plan, the plaintiffs sought entry of a judgment on the jury's verdict regarding their private law claims. At a hearing held on April 11, 2017, the trial court denied the plaintiffs' request for the court to sign a "partial final judgment" on their private

law claims. The trial court ruled that it would not sign a "final judgment" on the private law claims until after it ruled on the plaintiffs' claims for costs and attorney fees. Instead, on April 26, 2017, the trial court signed a "partial judgment" on the jury's verdict, dismissing various claims and theories of recovery against UNOCAL and its co-defendants and holding UNOCAL strictly liable to the plaintiffs in the amount of $1,500,000.00 for restoration of property damage. That judgment also reserves the plaintiffs' claims for costs and attorney fees. The plaintiffs state that their claims for costs and attorney fees will require extensive discovery and a three-day trial.

In May 2015, after the jury had rendered its verdict, the plaintiffs and UNOCAL each filed a motion for JNOV and new trial. After the trial court signed the judgment of April 26, 2017, the plaintiffs and UNOCAL re-urged their motions for JNOV and new trial. The trial court declined to rule on the motions for JNOV and new trial until after a hearing regarding the plaintiffs' motion for costs and attorney fees was held. The plaintiffs sought supervisory review of the trial court's decision to delay the hearing.

On July 25, 2017, this court granted the applicants' writ:

**WRIT GRANTED AND MADE PEREMPTORY.**
The trial court abused its discretion in deciding to conduct a hearing on attorney fees and costs before a final determination on the pending motions for a new trial and JNOV. We hereby vacate the trial court's rulings of April 11, 2017, April 26, 2017, and May 8, 2017. Judicial economy requires a determination on ultimate liability before the assessment of attorney fees and costs. Further, La.Code Civ.P. art. 2551 mandates that theses summary proceedings should be "conducted with rapidity." We remand this case and order the trial court to conduct a hearing on the pending motions for a new trial and JNOV within forty-five (45) days of the finality of this Order.

We grant the relators' [plaintiffs'] Motion to File a Supplemental Brief; we deny the Motion for Leave to File Amicus Curiae Brief filed by the State of Louisiana, through the Office of Conservation.

2

On August 31, 2017, a hearing was held on the motions for new trial and JNOV, the outcome of which is not known at this time. A hearing on attorney fees and costs was to be conducted after the trial court ruled on the motions.

Meanwhile, in response to discovery requests related to the motion for costs and attorney fees, VPSB, the plaintiff/respondent in the instant matter, produced 153 separate spreadsheets totaling 1,341 pages. UNOCAL complained, however, that VPSB converted the spreadsheets into non-searchable, static image files. Accordingly, UNOCAL filed a motion to compel production of the Microsoft Excel spreadsheets in its original electronic form. The motion was taken up on August 10, 2017, and subsequently denied. UNOCAL is now before this court on writs, seeking review of the trial court's ruling.

## SUPERVISORY RELIEF

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. *But see* La.Code Civ.P. art. 2083, comment (b), which provides "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs."

## ON THE MERITS

The issue herein is one of first impression regarding La.Code Civ.P. arts. 1461 and 1462 and the production of electronically stored information. Neither party included a copy of the discovery request sent by UNOCAL to VPSB. According to UNOCAL, the following requests for production were included in the written discovery request:

**Request for Production No. 2:**

Produce any and all timesheets, time records, billing summaries, time summaries, and/or any other record that documents the actual time spent by any attorney, paralegal, or other legal paraprofessional for any work performed in connection with this litigation as counsel for Plaintiff or on behalf of counsel for Plaintiff.

**Request for Production No. 3:**

Produce all summaries, spreadsheets, calculations, or other documents that support, substantiate, or identify the amount of attorneys' fees for which you seek reimbursement pursuant to Act 312.

**Request for Production No. 4:**

Produce all documents that verify, support, substantiate, or identify the costs for which you seek reimbursement pursuant to Act 312.

**Request for Production No. 18:**

Produce all materials that support, relate to, or quantify any portion of your claim to recover costs of any kind or fees of any kind from UNOCAL or any other defendant in this case.

Before addressing the merits, UNOCAL discusses the concept of metadata, which is found in the native format of electronically stored information (ESI) and is not visible when a document is printed or converted to a static image file. Of importance to UNOCAL is 1) substantive metadata used to create a document or file, which reflects modifications to the document; 2) system metadata, which improves the ability to efficiently access, search, and sort a large number of documents; and 3) embedded metadata, which provides the ability to view the formulas underlying the output in each cell. Additionally, although a static image file of ESI is still searchable using optical character recognition software, UNOCAL urges that the ability to search is limited to the ability of the software to translate the static image file.

4

UNOCAL argues, first, that VPSB failed to produce the spreadsheets in the form in which they are ordinarily maintained (Excel spreadsheets), in violation of La.Code Civ.P. art. 1462. Louisiana Code of Civil Procedure article 1462(C) reads:

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories of the request. If a request does not specify the form or forms for producing information, including electronically stored information, a responding party shall produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. When electronically stored information is produced, the responding party shall identify the specific means for electronically accessing the information.

UNOCAL also argues that VPSB failed to produce the spreadsheets in a reasonably useable form as required by Article 1462. Since Louisiana courts have not yet considered what constitutes "reasonably useable," UNOCAL avers that this court can rely on federal decisions involving analogous federal provisions as persuasive authority as well as the advisory committee notes to Fed. R. Civ. P. 34.[1] *See Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La.1983).

> The rule does not require a party to produce electronically stored information in the form it [sic] which it is ordinarily maintained, as long as it is produced in a reasonably useable form. But the option to produce in a reasonably useable form ***does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation***. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

---

[1] The comments to La.Code Civ.P. arts. 1461 and 1462 refer to the advisory committee notes to the 2006 amendments to Fed. R. Civ. P. 34.

Fed. R. Civ. P. 34, Advisory Committee Notes, 2006 Amendment, Subdivision (b)(emphasis added).

In the form in which the spreadsheets were produced, static image portable document format (PDF) files, UNOCAL complains that VPSB impermissibly removed the search capabilities of the Excel spreadsheets. UNOCAL cites *Green v. Monarch Recovery Management, Inc.*, 2014 WL 1631825 (S.D. Ind. 2014), wherein the defendants, in response to the plaintiff's motion to compel, provided the plaintiff with a PDF version of an Excel spreadsheet which was 1000 pages long.[2] The plaintiff complained that the PDF version 1) did not sufficiently represent the original spreadsheet; 2) did not help identify a procedure adopted by the defendants to avoid erroneous debt collection practices; and 3) did not clearly demonstrate that the pages provided were from a spreadsheet sent from one defendant to another. As such, the plaintiff requested an unredacted spreadsheet to assess how the data was mixed. At the hearing on the motion, the defendants argued that an unredacted spreadsheet would identify the names, addresses, and social security numbers of 2,400 people, only one hundred of which were relevant to the matter. Although the parties agreed to produce the electronically stored material in paper or PDF format, the court found that the agreement was subject to modification when the format to which they agreed materially altered the usefulness or evidentiary value of the document. "One of the unique strengths of Excel software is the ability to implement calculations and formulae that are not evident in a PDF version, so merely a PDF imprint of the surface information is not sufficient. Further, the ability to search the spreadsheet is essential to its

---

[2] In their response to the plaintiff's initial discovery requests (the spreadsheet was not the requested discovery), the defendants referred to an Excel spreadsheet. The plaintiff subsequently filed a motion to compel the Excel spreadsheet.

usefulness." *Id*. at *3. The motion to compel was granted, and the defendants were ordered to confidentially produce the entire unredacted spreadsheet.

In the instant case, UNOCAL complains that VPSB removed the search capabilities, leaving UNOCAL with the burden of converting the static image PDF files into a searchable text format using optical character recognition (OCR) software. UNOCAL refers to the testimony of Michael Bandemer, a computer forensics expert and the managing director of the electronic discovery and computer forensics practice with Berkely Research Group. Mr. Bandemer testified that errors occurred when he attempted to convert the PDF spreadsheets back into an electronic, searchable form. As such, he must manually review the spreadsheets and correct the errors. The burden, UNOCAL urges, makes little sense when VPSB can readily produce the spreadsheets in the Excel format.

UNOCAL also complains that VPSB impermissibly removed the embedded metadata, including formulae, from the spreadsheets. In *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640 (D. Kan. 2005), the defendant was ordered to disclose electronic documents, i.e. Excel spreadsheets, as they were maintained in the ordinary course of business. Prior to producing the spreadsheets, the defendant used software to scrub the files to remove the metadata and did not provide a log of what information was scrubbed. The defendant reasoned that the metadata was irrelevant and contained privileged information. Also, the plaintiffs never requested that the metadata be included. The court subsequently ordered the defendant to show cause why it should not be sanctioned for failing to comply with the order. At the hearing, the defendant stated that the metadata was deleted to prevent the plaintiffs from recovering privileged and protected information and to limit the information to the pools from which the defendant made the decisions that were being litigated.

7

In its opinion, the court discussed in great detail the emerging standards of electronic discovery with regard to metadata and whether the standards articulate a presumption against the production of metadata as urged by the defendant. The court initially looked to Fed. R. Civ. P. 34, finding insufficient guidance therein and in the jurisprudence. It then focused on the Sedona Principles for Electronic Document Production.

> In light of the proposed amendment to Rule 34, which adds "electronically stored information" as its own separate category, it is no longer necessary to focus on what constitutes a "document." With regard to metadata in general, the Court looks to Principle 12 and Comment 12.a. to the Sedona Principles. Based upon this Principle and Comment, emerging standards of electronic discovery appear to articulate a general presumption against the production of metadata, but provide a clear caveat when the producing party is aware or should be reasonably aware that particular metadata is relevant to the dispute.

> Based on these emerging standards, the Court holds that when a party is ordered to produce electronic documents as they are maintained in ordinary course of business, the producing party should produce the electronic documents with their metadata intact, unless that party timely objects to production of metadata, the parties agree that the metadata should not be produced, or the producing party requests a protective order. The initial burden with regard to the disclosure of the metadata would therefore be placed on the party to whom the request or order to produce is directed. The burden to object to the disclosure of metadata is appropriately placed on the party ordered to produce its electronic documents as they are ordinarily maintained because that party already has access to the metadata and is in the best position to determine whether producing it is objectionable. Placing the burden on the producing party is further supported by the fact that metadata is an inherent part of an electronic document, and its removal ordinarily requires an affirmative act by the producing party that alters the electronic document.

*Id*. at 652 (footnotes omitted). *See also Dahl v. Bain Capital Partners, LLC*, 655 F.Supp.2d 146 (D. Mass. 2009).

In the instant case, UNOCAL states that the ability to sort, filter, and rearrange the information at issue—$23 million dollars in attorney fees for nearly 40,000 hours of time spent by at least sixteen different attorneys, paralegals, and

other legal staff—is crucial. Without the Excel spreadsheets, UNOCAL must manually enter all 1,341 pages of spreadsheets.

Next, UNOCAL argues that VPSB failed to establish that production of the Excel spreadsheets in native format is not reasonably accessible. UNOCAL asserts that pursuant to Article 1462, the burden is on VPSB, the responding party, to show that the electronically-stored information is not reasonably accessible due to the burden or expense of producing same. Instead, UNOCAL contends, VPSB improperly shifts the burden to UNOCAL to establish a need for production of the Excel spreadsheets in native format or relies on the unsubstantiated possibility that the spreadsheets contain privileged information.

In opposition, VPSB argues that UNOCAL did not request a preferred format for the production or request that the documents be produced in native format. VPSB directs this court to the following excerpts from the discovery requests:

> **Interrogatory No. 2:**
>
> Provide an **itemized list** of all attorneys' fees for which you seek reimbursement under Act 312. In your response, please include the name of each person who performed the legal services, the **date(s)** on which the legal services were performed, the **amount of hours** actually expended performing the legal services, whether the legal services were performed in the **trial court or in the department**, and a **description of the legal services** sufficient to identify whether the legal services attributed to producing that portion of the evidence that directly relates to the establishment of environmental damage. (emphasis added).
>
> **Request for Production No. 2:**
>
> Produce any and all timesheets, time records, billing summaries, time summaries, and/or any other record that documents the actual time spent by any attorney, paralegal, or other legal paraprofessional for any work performed in connection with this litigation as counsel for Plaintiff or on behalf of counsel for Plaintiff.

9

Additionally, VPSB points out that UNOCAL's definition of "document" includes the original or a copy of the information requested. In its timely response to UNOCAL's requests, VPSB produced the itemized lists in PDF format and Bates-labeled TCM/Time:00001-01341. The first spreadsheet, VPSB explains, identifies each person who worked on the case, the total time each person worked on the case, the total time each person worked on broad categories of the litigation, the total time spent on the broad categories, the hourly rate for each person, the total fee for each person, and the total fee for all persons. VPSB contends that everything UNOCAL requested is in the PDF charts in TCM/Time:00001-01341. According to VPSB, UNOCAL did not seek its Excel spreadsheets until after it received the charts, and by that time, the discovery deadline had expired. As such, UNOCAL "had to resort to alternative and flimsy arguments to support its alleged entitlement to the information." VPSB suggests that UNOCAL, with its extensive legal representation, has the resources to review the 1,341 pages produced by VPSB to support its billable hours in this matter.

Next, VPSB argues that the Excel spreadsheets contain attorney work product protected under La.Code Civ.P. art. 1424 and the trial court's prior rulings. Article 1424(A) reads:

> The court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. Except as otherwise provided in Article 1425(E)(1), the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney.

VPSB asserts that the Excel spreadsheets include metadata which may reflect conversations amongst its attorneys. VPSB maintains that at one time, the

spreadsheets contained the text of internal emails between VPSB counsel and are of the highest sensitivity. This information, VPSB urges, is protected as attorney work product, mental impressions, and trial strategy in anticipation of litigation. VPSB adds that if it was required to produce the Excel spreadsheets, it would need to hire a computer expert to remove privileged information.

Next, VPSB asserts that the trial court previously ruled that it was not entitled to metadata. In 2010 and 2014, VPSB requested UNOCAL's document management system and metadata based on the belief that UNOCAL was withholding documents on the eve of trial. UNOCAL opposed the 2010 request and a continuance of trial. The trial court denied the discovery request but continued the trial. According to VPSB, after trial was continued, UNOCAL produced a trove of relevant documents which, in fact, had been withheld. In the 2014 motion to compel, UNOCAL and Chevron produced 110,000 pages after the deadline elapsed for the plaintiffs' expert reports. A goal, VPSB maintains, of the motion to compel was to obtain access to the database to determine if additional documents were missing; access was denied again. VPSB states that it is now surprised that UNOCAL seeks access to electronic files, a request VPSB describes as "beyond the pale." VPSB urges that UNOCAL does not seek documents created in the normal course of business but seeks metadata related to the mental impressions, trial strategies, and attorney work product. VPSB concludes that the trial court's prior rulings prohibit access to metadata.

VPSB also argues that UNOCAL either failed or refused to produce its own Excel spreadsheets and other electronic files. VPSB refers to and includes several documents introduced at the hearing as examples of documents produced by UNOCAL in PDF format which were produced from an underlying electronic or native format document. Unlike UNOCAL, VPSB stresses that it specifically

asked for the production of the electronically stored version of UNOCAL's spreadsheets which was ignored by UNOCAL.

With regard to the lack of Louisiana jurisprudence regarding Article 1462 and whether PDF format complies, VPSB submits that the PDF format is so common in civil discovery, the issue has not been litigated. VPSB adds that federal jurisprudence interpreting the federal rule upon which Article 1462 is based has also ordered the production of documents in PDF format and rejected motions requesting production of ESI with metadata (when not requested). *See In re Priceline.com Inc. Securities Litigation*, 233 F.R.D. 88 (D. Conn. 2005), and *Kentucky Speedway, LLC v. National Ass'n. of Stock Car Auto Racing, Inc.*, 2006 WL 5097354 (E.D. Kentucky 2006).

More specific to the facts at hand, VPSB cites *150 Nassau Assoc. LLC v. RC Dolner LLC*, 96 A.D.3d 676 (N.Y. 2012), wherein the defendant moved to compel the production of certain income tax records and to impose discovery sanctions. The motion was denied. On appeal, the court noted that 1) the documents responsive to the defendant's request had been produced multiple times, the final time in a searchable PDF format; 2) the defendant did not request the documents in the native file format until its reply on its own motion to compel; and 3) the defendant admitted that the only benefit of the motion was for the defendant's convenience. Accordingly, the court concluded that the lower court's denial of the motion to compel the reproduction of the documents in their native format was not an abuse of discretion.

VPSB also refer to Comment 12.b. of the Sedona Principles, which reads:

> ***Comment 12.b.*** ***Ideally, the form or forms used for production of ESI should be agreed upon early. Absent agreement, ESI must be produced as ordinarily maintained or in a form or forms reasonably usable to the requesting party.***

12

In amending Rule 34(b) in 2006 to accommodate the expanding use and production of ESI, the Advisory Committee encouraged parties to reach agreement on the various form or forms of production, given that different types of data may serve different purposes and the potential need for native format production and metadata may vary. The default forms of production appropriate to paper discovery did not always have direct equivalents in electronic discovery, but the Rule 1 goals should be the same—to encourage forms of production that would facilitate the orderly, efficient, and cost effective production of ESI and which allow the requesting party to meaningfully analyze, search, and display the produced electronic data.

Absent agreement, ESI must be produced in the form in which it is ordinarily maintained or in a form that is reasonably usable to the requesting party. Typically, a requesting party does not need ESI produced in its native format in order to access, cull, analyze, search, and display the ESI. Indeed, the most common way to produce ESI for more than a decade has been to create a static electronic image in Tagged Image File Format (TIFF) or Adobe Portable Document (PDF) file format, to place the extracted text from the document into a text file, and to place the selected metadata and other non-apparent data into one or more separate load files. This form is frequently referred to as the production of "TIFF, Text and Load Files" or "TIFF+". With production in this format, the requesting party may reassemble the components in a fashion compatible with a chosen review platform, so that the produced data can be text-searched and sorted or filtered based on available metadata fields.

Parties should not demand forms of production, including native files and metadata fields, for which they have no practical use or that do not materially aid in the discovery process. For example, it may be excessive for a party to demand that ESI be produced in native format when the evidence needed to prove the claims and defenses of the parties is found on the face of the documents, and the information contained in the text and load Files will allow the requesting party to organize and search the documents. Indeed, even with technological advances, in the majority of instances, TIFF+ is a "reasonably usable" form of production for most purposes and types of ESI under Rule 34(b)(2)(E)(ii). Accordingly, requesting parties should avoid demanding a form of production, such as all ESI to be produced in native format, unless they have a demonstrably reasonable need for that form of production and the necessary technology, skills, and resources available to make reasonable use of and to protect the ESI. Conversely, responding parties should not seek to produce ESI in a form or forms that inhibit the ability of the requesting party to use advanced technology reasonably required to access, cull, analyze, search, and display the information. Finally, all sides should bear in mind that both requests and responses to discovery are bounded by Rule 26(g) obligations.

In sum, when selecting the form or forms of production of ESI—when requesting production, when responding to requests for production, when meeting and conferring under Rule 26(f)(3), and when participating in Rule 16(b) scheduling conferences—parties and the court should consider: (a) the forms most likely to provide the information needed to establish the relevant facts related to the parties' claims and defenses; (b) the need to receive ESI in particular formats in order to functionally access, cull, analyze, search, and display the information produced; (c) whether the information sought is reasonably accessible in the forms requested; (d) the relative value, and potential challenges created, by responding with ESI in the requested format(s); and (e) the requesting party's own ability to effectively manage, reasonably use, and protect the information in the forms requested.

The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 88-90, 2017.[3]

VPSB urges that its counsel spent a considerable amount of time, effort, and resources to review thirteen years of complex litigation to create the requested spreadsheets, which contain the exact information requested in Interrogatory No. 2. Further, VPSB maintains, the spreadsheets were produced in PDF format, because the format omits metadata that potentially contains privileged or confidential information of the attorneys who created the spreadsheets. According to VPSB, the spreadsheets are also searchable and cannot be easily altered or changed. VPSB adds that the Bates label feature facilitates the use of the spreadsheets in depositions, hearings, and at trial. Additionally, VPSB avers that the qualities UNOCAL complains are lacking are the same qualities that make the PDF format ubiquitous in litigation. UNOCAL seeks to manipulate the underlying information in Excel spreadsheets in derogation of the Sedona Principles upon which it relies.

---

[3] The publication may be downloaded - https://thesedonaconference.org/download-pub/5120.

14

VPSB also contends that the jurisprudence cited by UNOCAL is distinguishable and unpersuasive. Unlike the defendant in *Williams*, 230 F.R.D. 640, who was held to be in violation of a court order for failing to produce electronic Excel spreadsheets, VPSB has not been ordered to produce same, and the only outstanding request for information does not specify that the production be done in Excel format. Further, the court in *Williams* found that the metadata from the spreadsheets were relevant to the plaintiffs' allegations. In the instant case, VPSB maintains, UNOCAL has not articulated why the metadata are relevant to the claims at issue.

In *Green*, 2014 WL 1631825, VPSB asserts, the issue being litigated—claims under the Fair Debt Collection Practices Act—involved the process of, and an error in, uploading accounts into Excel spreadsheets. The defendants claimed that the incident involving the plaintiff was an isolated incident. The court found, however, that the redacted spreadsheets in PDF format did not sufficiently represent the original spreadsheet or identify that the procedure upon which they relied was "'reasonably adapted to avoid' erroneous debt collection practices." *Id.* at *3.

In reply, UNOCAL argues that the trial court committed obvious legal error in denying the motion to compel. First, UNOCAL contends that its broad definition of "document"—original or copy of original—in its discovery requests enlarges the scope of responsive documents. There is no dispute, UNOCAL urges, that the Excel spreadsheets are responsive documents, and that the definition of document has nothing to do with the form for production. Second, UNOCAL contends that VPSB's argument ignores Article 1462, in that it neither produced the spreadsheets in the form in which they are ordinarily maintained nor in a reasonably usable form. Further, UNOCAL avers, the fact that it did not

15

specifically request production in native format is irrelevant, because when no form is specified, the responding party must indicate in its response the form it intends to use. In this case, UNOCAL argues, VPSB simply produced the spreadsheets in the form of its choice with no advance notice of the form as required by Article 1462.

UNOCAL also argues that the trial court erred in denying the motion when VPSB failed to produce the Excel spreadsheets in a reasonably usable form. UNOCAL reiterates that VPSB removed the search capabilities, embedded metadata, and the ability to sort, filter, and rearrange the information, making it more difficult and burdensome for UNOCAL to efficiently use the information.

Lastly, UNOCAL urges that VPSB cannot rely on a vague, unsubstantiated assertion of potential privilege. *See Maldonado v. Kiewit Louisiana Co.*, 12-1868, 12-1869 (La.App. 1 Cir. 5/30/14), 152 So.3d 909, *writ denied*, 14-2246 (La. 1/16/15), 157 So.3d 1129. UNOCAL adds that it does not seek the disclosure of legitimately privileged information or information for which the privilege has been waived. Additionally, UNOCAL maintains that speculation about what the Excel spreadsheets may contain is insufficient to show that a privilege applies, and even if they did contain privileged information, VPSB failed to provide the most basic information to substantiate the claim.

At the hearing, the trial court stated that it was trying to find a middle ground:

> Mr. Coenen [Plaintiffs' counsel] did suggest that perhaps you could better delineate the things that you want and the way you want it, other than them exposing the Excel spreadsheet that they've created. That's number one. And that is that you make specific requests as to how you would want this presented, Mr. Phillips [Defendants' counsel], and see if there's a proper response or one that you think is acceptable as to how you could deal with it as a defense to what they're presenting. That's number one. Number two, if you believe that there's anything in any of that information or in the information

that's been furnished here, Mr. Coenen, that you believe is privileged, you're going to have to identify it as to what you believe is privileged, of course what it is, and why you believe it's privileged. And if Mr. Phillips doesn't think that it should be excluded because of privilege, then you'll have to offer it to the Court to see why it should be excluded from here as privileged information.

We find that UNOCAL incorrectly states that VPSB was required to notify UNOCAL, in advance, as to what form it intended to produce a request. Instead, Article 1462(C) simply states that, "when electronically stored information is produced, the responding party shall identify the specific means for electronically accessing the information."

There is no dispute that UNOCAL did not specifically request that the information be produced in Excel format. The dispute involves the issues of whether any of the information requested is protected and whether the format in which the information was produced is reasonably useable.

VPSB clearly argued that the Excel spreadsheets contain attorney work product and that it took a significant amount of manpower and expense to create a PDF document to include all the information requested by UNOCAL. As such, we find that pursuant to the protection provided in Article 1424(A), the trial court did not err or abuse its discretion in denying UNOCAL's motion to compel the Excel spreadsheets.

With regard to the usability of the PDF spreadsheets, while UNOCAL has established that it may be burdensome to convert the static image PDF files into a searchable text format, it is not clear how UNOCAL's ability to manipulate the information produced in an Excel format is necessary in its defense of VPSB's claim for costs and attorney fees. UNOCAL has not shown how or why the information produced in a PDF format is not satisfactory or reasonably useable to its defense. Accordingly, the trial court did not err or abuse its discretion in

denying UNOCAL's motion to compel.  We find no error or abuse of discretion in the trial court's ruling.

**WRIT DENIED.**